HALL, Judge.
Donald F. Blythe, Receiver of Blythe Company, Inc., third party plaintiff herein, prosecutes this devolutive appeal from a summary judgment dismissing his third party petition against third party defendants, Leon Sarpy, Robert Sarpy, and Humble Oil & Refining Company.
This litigation had its inception in a petitory action filed June 28, 1963 by William J. Meyer, Jr., against Leon Sarpy and Robert Sarpy in which Meyer claimed ownership of:
“That certain tract of land situated in Section 41, Township 12 South, Range 8 East, St. Charles Parish, Louisiana, being lot 27 of the Blythe tract of New Orleans Great West Lake Area Subdivision, which tract of ground contains approximately ten acres.”
by virtue of a duly recorded warranty deed to him from Blythe Company, Inc. dated November 8, 1928. Plaintiff, Meyer, joined Donald F. Blythe, Receiver of Blythe Company, Inc., as a party defendant and called upon the Receiver to appear and prosecute the suit on his behalf as his warrantor.
Leon and Robert Sarpy answered plaintiff’s suit alleging that they acquired a large tract of land, including the 10 acres claimed by Meyer, by purchase at Sheriff’s Sale dated April 21, 1934 in the foreclosure proceedings entitled “Leon Sarpy v. Blythe Company Ltd.” No. 2192 of the docket of the 29th Judicial District Court for the Parish of St. Charles; that they have been in possession of the large tract ever since through leases granted to Humble Oil & Refining Company and others; that when plaintiff, Meyer, acquired his title to the 10 acre tract the property was under mortgage to Leon Sarpy and that when Leon Sarpy foreclosed any vestige of title that Meyer had was extinguished.
The Receiver of Blythe Company, Inc. filed an “Answer and Third Party Petition” in which he, after admitting the allegations of plaintiff Meyer’s petition, assumed the role of third party plaintiff and alleged that the Receivership is the owner of the following described property, which includes the 10 acre tract claimed by Meyer:
“That certain Tract of Land, situated in Sections 7, 20, 21 and 41, Township 12 South, Range 8 East, St. Charles Parish, Louisiana, known in part as Great West Lake Area Subdivision, containing 2600 acres more or less, more particularly described in an instrument purporting to be a sheriff’s *389 deed to Leon Sarpy dated April 21, 1934, which instrument is recorded in C.O.B. J.J. Folio 92, records of St. Charles Parish, Louisiana.”
The Receiver’s third party petition is directed against Leon Sarpy, Robert Sarpy, and their mineral lessee, Humble Oil & Refining Company, and alleges in substance that the judgment rendered in the foreclosure proceedings is an absolute nullity and therefore the Sheriff’s Sale, to Leon Sarpy predicated on such judgment conveyed no title. The Receiver prayed for judgment (a) declaring the nullity of the judgment rendered July 29, 1933 in the foreclosure proceedings, (b) declaring the nullity of the Sheriff’s deed predicated thereon and (c) setting aside and cancel-ling the mineral leases held by Humble Oil & Refining Company.
It is thus seen that the sole issue presented by the Receiver’s third party action is the nullity vel non of the judgment rendered July 29, 1933 in the foreclosure proceedings and the Receiver’s sole contention in this respect consists of an alleged lack of appearance by Blythe Company, Inc. in such suit and hence no joinder of issue.
Specifically, the Receiver alleged that:
“(a) all attempted appearances by Blythe Company Inc. in said suit were made by and through Joseph A. Blythe, its president who was not at the time and never has been an attorney at law,
"(b) a corporation cannot lawfully appear in judicial proceedings in proper person, nor can it appear through any person who is not a duly qualified attorney at law.
"(c) Consequently a purported answer filed on behalf of Blythe Company Inc. by one who was not an attorney at law was of no legal force and effect, and therefore issue was never joined in said suit.
“(d) Since there was no joinder of issue and since the plaintiff did not resort to the procedure required for obtaining a judgment by default, the Court was without any legal right, power authority to render and sign the judgment.”
Third party defendants took the Receiver’s discovery deposition and thereupon moved for a summary judgment in their favor under the provisions of LSA-C.C.P. Art. 966 assigning the following reasons therefor:
1. Blythe Company, Inc., made a complete appearance in the foreclosure proceedings and is bound by the judgment therein.
2. The corporation fully acquiesced in that judgment.
3. The Sheriff’s deed was final and conclusive against Blythe Company, Inc.
4. The Receiver’s action is improper under LSA-C.C.P. Art. 1111.
5. The Receiver’s action is barred by the prescription of 30 years under LSA-C.C. Art. 3548.
The District Judge granted the summary judgment and dismissed the Receiver’s third party petition. This appeal involves that judgment, alone.
There are no genuine issues as to material fact. The record reveals the following:
The property forming the subject of the third party action v/as foreclosed upon via ordinaria by Leon Sarpy upon the basis of a valid conventional mortgage in the suit entitled “Leon Sarpy v. Blythe Company Inc.” being No. 2192 of the docket of the 29th Judicial District Court for the Parish of St. Charles. On June 23, 1933 Joseph A. Blythe as president of Blythe Company, Inc., accepted service of the petition on behalf of and in the name of the corporation and waived citation. The suit was filed on June 30, 1933. On July 20, 1933 an answer which amounted to a confession of judgment was filed on behalf of and in the name of Blythe Company, Inc. admitting all of the allegations of plain *390 tiff’s petition. The answer was signed: “Blythe Co. Inc., by Joseph A. Blythe, Pres.” The affidavit attached to the answer was signed in the same manner.
On July 29, 1933 Joseph A. Blythe as President of Blythe Company, Inc., in the same manner accepted service on behalf of the corporation and waived citation on a motion for judgment on the face of the pleadings (under the provisions of Act 27 of 1926 as amended) and on the same date the District Judge rendered and signed Judgment in favor of Leon Sarpy as prayed in the net sum of $43,059.46 plus- interest, attorney’s fees and costs and recognized plaintiff’s vendor’s lien and special mortgage and ordered the property sold by the Sheriff.
On August 2, 1933 a writ of seizure was issued, and on February 16, 1934 a notice of seizure was served by the Sheriff on Blythe Company, Inc., by personal service on its secretary, John A. Beverungen and on February 26, 1934 the return on the notice of seizure was filed with the Clerk of Court.
Leon Sarpy bought the property in at the Sheriff’s Sale and on April 21, 1934 the Sheriff executed a deed to him which was registered on August 31, 1934 in C.O.B. J.J. Folio 92, Parish of St. Charles.
On August 10, 1934 the Clerk of Court of St. Charles Parish wrote Joseph A. Blythe, President of Blythe Company, Inc., regarding the recorded judgment in suit No. 2192 as operating against the New Sarpy property of Blythe Company, Inc. and enclosing affidavit to be executed by Leon Sarpy authorizing cancellation of the judgment insofar as the New Sarpy property was concerned as promised by letter from Mr. Sarpy’s attorney dated August 15, 1933.
On September 2, 1935 Leon Sarpy issued a counter-letter in favor of Robert H. Sarpy for an undivided one-half interest in the property and on April 11, 1944 in accordance therewith Leon Sarpy transferred this undivided half-interest to Robert H. Sarpy by duly recorded deed.
On June 27, 1937 the property was leased for minerals to Humble Oil & Refining Company and a second lease was granted by the Sarpys to that company on May 18, 1957.
Third party defendants state in their brief that Blythe Company, Inc., allowed the property in question here to be adjudicated to the state on March 13, 1933 for non-payment of 1931 taxes and paid no taxes after 1930. We have been unable to find any reference to the adjudication in the record, but it is clear from the deposition of the Receiver that the property was dropped from the corporation’s records in about the year 1932 and there is nothing in such records subsequent to 1932 concerning any claim to ownership of the property.
Moreover Mr. Donald F. Blythe, the Receiver, identified a letter by his late father, Joseph A. Blythe, the then president of Blythe Company, Inc., to the Internal Revenue Department, dated October 20, 1945 in which the president declared: “In addition to the above losses shown by our Cash Journals, we suffered very heavy losses by foreclosure as below:” and the letter then proceeds to make the admission that one loss was “September 18, 1933 Leon Sarpy $43,-059.46”. The Receiver testified that by this language he understood “just what it states, there was a foreclosure.”
In further confirmation the Receiver testified that two different ledger sheets of Blythe Company, Inc., carried the respective notations: “July 23, 1953: all Westlake area foreclosed — obsolete,” and “August 7, 1953: Notours — -foreclosed.” The Receiver admitted that these entries were made by himself in his own handwriting after having discussed the situation with his father, the president, who has since died.
The Receiver further testified that he could not state that Blythe Company, Inc., ever attempted to have the property as *391 sessed in its name for tax purposes subsequent to 1933 and that he knew of no attempt by the corporation to pay taxes on the property.
The Receivership of Blythe Company, Inc., was filed in May 1963 (more than 30 days before Meyer filed his suit) for the specific purpose, according to the testimony of the Receiver, of this third party action, after discussion with his attorneys.
The above stated facts are uncontro-verted.
OPINION
The sole contention of the Receiver is that the answer filed in the 1933 foreclosure proceeding by Joseph A. Blythe, as President of Blythe Company, Inc., was not a valid appearance and answer by the corporation because Joseph A. Blythe was not a licensed attorney at law. The Receiver relies entirely on the so-called majority rule at Common Law that “a corporation can appear in an action or judicial proceeding in a court of record only by an attorney at law; it cannot appear in person or by an officer, agent, or employee who is not an attorney * * * ” (see 19 C.J.S. Corporations § 1323, p. 1004) but he fails to show that such rule applies in this state.
At the time the foreclosure proceedings were filed the applicable statute regulating the practice of law and appearances in propria persona was Act 202 of 1932. The Receiver has ignored that portion of Section 2, paragraph (b) (3) of the Act which reads:
“Nothing in this section shall be construed to prohibit any person, firm or corporation from attending to and caring for his or its own business, claims or demands * * (Emphasis supplied.)
While another and different clause in the Act was declared unconstitutional by our predecessor court in Meunier v. Bernich, La.App., 170 So. 567, it validated the remainder of the Act thereby leaving this provision intact. It is noted parenthetically that the quoted language does not appear in the present statute. (See LSA-R.S. 37:213.)
In answering the foreclosure proceedings Blythe Company, Inc., was attending to its own business. Being a corporation it perforce had to act through some agent, and there is nothing in Act 202 of 1932 which requires that it act through an attorney at law nor which prohibits it from, acting through one not qualified to practice.
In view of the quoted provision of Act 202 of 1932 we must conclude that the Common Law rule did not apply in this state at least at the time of the foreclosure proceedings.
But we prefer to base our opinion herein on another ground viz. that Blythe Company, Inc., has acquiesced in the foreclosure judgment and Sheriff’s Sale. This proposition appears so plain to us that we see no necessity to discuss other points raised by third party defendants, however meritorious they may be.
We are of the opinion that the uncontro-verted facts of this case exhibit a voluntary and unconditional acquiescence in the foreclosure judgment.
Articles 2002 and 2003 of the LSA-Code of Civil Procedure read as follows:
“Art. 2002. Annulment for vices of form; time for action
“A final judgment shall be annulled if it is rendered:
“(1) Against an incompetent person not represented as required by law;
“(2) Against a defendant who has not been served with process as required by law and who has not entered a general appearance, or against whom a valid judgment by default has not been taken; or
*392 “(3) By a court which does not have jurisdiction over the subject matter of the suit.
“Except as otherwise provided in Article 2003, an action to annul a judgment on these grounds may be brought at any time.”
“Art. 2003. Same; action lost through acquiescence
“A defendant who voluntarily acquiesced in the judgment, or who was present in the parish at the time of its execution and did not attempt to enjoin its enforcement, may not annul the judgment on any of the grounds enumerated in Article 2002.”
The grounds for nullity above enumerated are exclusive except for judgments obtained by fraud or ill-practices (see LSA-C.C.P. 2004). No fraud or ill practice is charged here.
From and after the effective date of the Code of Civil Procedure the Receiver could not maintain a direct action to annul the foreclosure judgment, and a fortiori he cannot attack it collaterally.
Leon Sarpy and Robert Sarpy have been in actual, open and peaceable possession of tire property for almost 30 years through their mineral lessee, Humble Oil & Refining Company. The operations of this company have developed the property into a major oil field, and the following oft repeated quotation from Lafitte, Dufilho & Co. v. Godchaux, 35 La.Ann. 1161, 1163 may be appropriate here:
“The genius of our law does not favor the claims of those who have long slept on their rights, and who, after years of inertia, conveying an assurance of acquiescence in a given state of things, suddenly wake up at the welcome vision of an unexpected advantage and invoke the aid of the courts for relief, under the effect of a newly discovered technical error in some ancient transaction or settlement.” (Emphasis supplied.)
For the foregoing reasons the judgment appealed from is affirmed, costs of both courts to be borne by appellant.
Affirmed.